UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| QUANG NGUYEN,<br><br>    *Plaintiff*,<br><br>v.<br><br>KIMBERLY VU, *et al.*,<br><br>    *Defendants*. | No. 19-cv-894 (DLF) |

## MEMORANDUM OPINION

In this diversity case, Quang Nguyen brings various state law claims against Kimberly Vu and two of her solely-owned companies, Global Real Estate Management, Inc. and Global Financial Group, Inc., based on their failed joint business venture. Nguyen seeks compensatory and punitive damages. Before the Court is Nguyen's Amended Motion for Summary Judgment, Dkt. 63. For the reasons that follow, the Court will grant the motion in part and deny the motion in part.

**I.    BACKGROUND**

Vu, who was initially represented by counsel but now represents herself pro se, and her two companies, who remain unrepresented, failed to respond to Nguyen's summary judgment motion, despite being warned of the consequences, *see, e.g.,* Minute Order of September 1, 2020. Thus, the Court accepts the factual assertions in Nguyen's statement of undisputed facts and supporting documents as true. *See Neal v. Kelly*, 963 F.2d 453, 456–57 (D.C. Cir. 1992); *see,*

*e.g.*, *Etessami v. Customs & Border Prot.*, No. 16-cv-945, 2017 WL 2869422, at *3 (D.D.C. May 19, 2017).[1]

Nguyen, a resident of Texas, *see* Compl. ¶ 2, Dkt. 1, and Vu, a resident of Virginia, *see id.* ¶ 3, first formed a friendship on social media, *see* Pl.'s Stmt. of Undisputed Facts ¶¶ 1–2, Dkt. 63-2, and eventually entered into business together, *see generally id.*  First, Vu invited Nguyen to invest $50,000 in a project flipping investment properties in Washington, D.C.  *Id.* ¶ 3.  She indicated that she had had extensive experience and success in flipping properties in that area.  *Id.* ¶ 4.  Vu further indicated that she had invested $200,000 in the project herself.  *Id.* ¶¶ 6, 9.  She also provided Nguyen with the operating agreement of one of her solely-owned companies, Global Real Estate Management, a Washington, D.C. corporation (and a defendant in this case), *see id.* ¶ 9; Compl. ¶ 4, which showed a capital infusion of $200,000, Pl.'s Stmt. of Undisputed Facts ¶ 9.  Contrary to Vu's representations, however, she had not invested any capital in the joint venture at the time.  *Id.* ¶ 12.  Rather, at the time Vu secured Nguyen's commitment, the account for the project had an overdraft balance of –$147.56.  *Id.* ¶¶ 11–13.

In addition, Vu provided Nguyen with other investment documents indicating his relative share and the operating costs of the project.  *Id.* ¶¶ 15–17.  They agreed, in relevant part, that Nguyen would be paid back the entirety of his investment plus transaction fees, and any profits would be split between the two according to their relative ownership interests.  *Id.* ¶ 22.  Based on all of these representations, Nguyen agreed to contribute to the venture.  *Id.* ¶ 19.  Vu told

---

[1] "[A]ny factual assertion in the movant's affidavits will be accepted by the [Court] as being true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertion." *Neal*, 963 F.2d at 456–57.  The local rules of this district likewise dictate that "[i]n determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  LCvR7(h)(1).

Nguyen that she would use one of her other solely-controlled entities, the Global Financial Group, also a Washington, D.C. corporation, Compl. ¶ 5, and defendant in this case, as "the primary vehicle to purchase and sell real estate in furtherance of the Business Venture," Pl.'s Stmt. of Undisputed Facts ¶ 23, and would store the investment capital in bank accounts controlled by Global Financial Group, *id.* Mere days after Nguyen contributed the agreed upon sum of $50,000, Vu requested that he contribute another $50,000, which Nguyen did. *Id.* ¶¶ 30, 31, 34.

Ultimately, though, Vu did not intend to use Nguyen's capital investments for the project as described, but rather for "personal expenditures unrelated to the flipping of real estate in the Washington, D.C. Metropolitan Area." *Id.* ¶ 20. For example, on "the same day she received Mr. Nguyen's second capital contribution payment . . . Ms. Vu initiated another transfer of $4,700.00 to her personal account, withdrew $9,500.00 in cash, which remains unaccounted for, transferred $9,000.00 to a Vietnam account for purposes of 'family support,' and, between January 22 and 23, 2018, went on a shopping spree, including spending $3,922.00 in purchases at Gucci, $1,534.83 at the Apple store, and $3,286.00 at Bloomingdales." *Id.* ¶ 37.

Meanwhile, Vu gave Nguyen assurances that she was "very actively working on [the] project." *Id.* ¶ 38. The two then met in person, at which point Vu suggested they both contribute an additional $100,000. *Id.* ¶ 39. In reliance on Vu's assurances, Nguyen agreed, and transferred the funds. *Id.* ¶ 40. Although Vu represented that she too would contribute an additional $100,000, she did not. *Id.* ¶¶ 41–42. Instead, in the week following Nguyen's transfer, "Vu withdrew $31,000.00 of Mr. Nguyen's investment funds in cash . . . transferred $50,000.00 to a personal account for Global Realty Management, Inc.[] opened on March 31, 2018, and spent an additional $3,400.00 at various retailers." *Id.* ¶ 43. Vu again made various

3

unaccounted for withdrawals the next month, including a $32,500 cash withdrawal, a $3,000 wire to Vietnam for "family support," and a $7,500 check payable to herself. *Id.* ¶ 44. Vu then asked Nguyen to contribute an additional $100,000, which he did, making his total contribution at that point $300,000. *Id.* ¶ 46. Vu continued to represent that she had contributed $200,000 to the project, even though she had yet to contribute any funds. *Id.* ¶ 51. Vu then asked Nguyen to loan her $50,000 for personal expenses and debts, which he did, based on her representation that she would repay the principal amount and any transaction fees by December 30, 2018, plus any interest on the principal at the rate of 15%. *Id.* ¶¶ 52–53.

Vu then asked Nguyen to contribute an additional $50,000 to the joint venture, representing that this would be the final investment needed to complete the project successfully. *Id.* ¶ 59. Nguyen reluctantly agreed. *Id.* ¶ 60. But Vu later changed course, suggesting that "it would be preferable to purchase a *commercial* building in the Washington, D.C. area, for which the Business Venture would require even more funding." *Id.* ¶ 60 (emphasis added). When Nguyen informed Vu that he did not have the money, "Vu warned that his failure to [pay] could result in the loss of his investment to date . . . and instructed Mr. Nguyen to withdraw funds held in various retirement accounts and liquidate other assets to raise this capital." *Id.* ¶ 62. Vu further promised that Nguyen would make up any consequential losses in the proceeds from the business venture. *Id.* ¶ 63. Nguyen accordingly liquidated his retirement and credit assets and contributed an additional $150,000 to the project, incurring transactional costs of $13,500. *Id.* ¶ 65. Here again, though, Vu did not use Nguyen's contributions to further the joint venture. *Id.* ¶ 69. Rather, Vu made various unaccounted for withdrawals and personal purchases, including $20,500 withdrawn for "family support," $28,100 withdrawn in cash, $1,252.50 spent at Bloomingdales, $7,923.50 spent at Neiman Marcus, $1,650 spent at a dentist's office, and $7,000

withdrawn in a check Vu wrote to herself and deposited in her personal checking account. *Id.* ¶¶ 70–76.

In the end, Nguyen contributed a total of $505,000 in investment funds plus $50,000 for the personal loan. *Id.* ¶ 77. None of those funds were used to purchase real estate, and he has not been repaid any portion of his investment contribution or the personal loan. *Id.* ¶ 101. Nguyen was also never paid the $8,125 in accrued interest on the loan as of the date of Nguyen's summary judgment filing. *See id.* ¶ 53 (noting that the parties agreed to a 15% interest rate on the personal loan); Am. Mot. for Summ. J. at 31 (noting the total interest due). Nguyen also lost $13,500 in fees and penalties for liquidating his retirement and credit assets, at the direction of Vu, Pl.'s Stmt. of Undisputed Facts ¶ 65, as well as $430 in wire transfer fees, *see* Am. Mot. for Summ. J. Ex. 7 (receipts for wire transfers); *see also* Pl.'s Stmt. of Undisputed Facts ¶¶ 29, 34, 49, 55. This brings Nguyen's total loss to $577,055.

Nguyen filed his complaint in this suit on March 28, 2019, Dkt. 1. The day after Vu and the defendant companies were served with the complaint in this litigation, on April 4, 2019, Vu initiated a criminal complaint against Nguyen, alleging that he had committed sexual battery against her. Pl.'s Stmt. of Undisputed Facts ¶ 92. Nguyen denied the allegation, and Vu dropped the charge. *Id*. ¶ 98. Vu and her companies then responded to the complaint with an eleven-count counterclaim. Dkt. 11. The Court later granted in part Nguyen's partial motion to dismiss the counterclaims, Dkt. 13, dismissing three of the eleven counterclaims, *see* Order of February 21, 2020, Dkt. 53.

Vu and her companies were initially represented by counsel, but Vu now represents herself pro se. *See* Minute Order of December 6, 2019 (granting a motion to withdraw as attorney due to irreconcilable differences between counsel and defendant). The Court "advised

Ms. Vu on multiple occasions," however, that although she may represent herself pro se, she cannot represent the corporate defendants. *Id.* (citing *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel.")).  Nevertheless, Vu has failed, as of this point, to comply with the Court's instruction that she retain counsel to represent her companies.

Throughout this litigation, Vu has failed to comply with numerous other orders of this Court.  Despite the Court's repeated orders that Vu comply with the discovery process, for example, she declined to do so.  *See, e.g.*, Minute Order of October 22, 2019; Minute Order of November 8, 2019; Minute Order of November 25, 2019; Minute Order of December 6, 2019; and Minute Order of December 17, 2019.  Given Vu's persistent refusal to comply, the Court laid out a discovery plan in which discovery would proceed in stages.  *See* Hearing of December 17, 2019.  Specifically, the Court explained that until Vu complied with Nguyen's long-standing discovery requests, including requests for information supporting her own counterclaims, the Court would not entertain Vu's broad discovery requests.  *Id.*  Vu still refused to meaningfully participate in discovery as ordered, *see* Hearing of January 6, 2020, and Nguyen was forced to seek Vu's bank records through costly subpoenas to financial institutions.  Am. Mot. for Summ. J. at 2–3.  Vu has also failed to appear at multiple scheduled hearings before this Court.  *See, e.g.*, Hearing of January 6, 2020; Hearing of February 21, 2020.  Eventually, after holding a hearing on the motion at which Vu declined to appear, the Court granted Nguyen's motion to compel discovery responses, Dkt. 39, and motion for attorney's fees and sanctions, Dkt. 41; *see* Order of January 6, 2020, Dkt. 47; Order of February 3, 2020, Dkt. 51.

Nguyen then filed a motion for summary judgment, Dkt. 62, and later an Amended Motion for Summary Judgment, Dkt. 63, on the remaining counts in the complaint and the counterclaim.  The Court warned Vu, *see* Minute Order of September 1, 2020, that on a motion for summary judgment, "any factual assertions in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion."  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).  The Court further admonished that: "Under Fed. R. Civ. P. 56(e), if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials including the facts considered undisputed show that the movant is entitled to it; or (4) issue any other appropriate order."  Minute Order of September 1, 2020.  Nonetheless, as noted, neither Vu nor her companies, which remain unrepresented, responded to Nguyen's motion for summary judgment.  The motion is now ripe for review.

## II.   LEGAL STANDARDS

A court grants summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A "material" fact is one with potential to change the substantive outcome of the litigation.  *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party.  *See Anderson*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.  "If there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law if

7

the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

It is well established, however, that "a plaintiff opposing summary judgment" must "substantiate [allegations] with evidence" that "a reasonable jury could credit in support of each essential element of her claims." *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015). The moving party is entitled to summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Although Vu has not agreed that Virginia law should apply to these state law claims, no substantive choice of law analysis is required, as there is no material "conflict between the laws of the relevant jurisdictions" in the legal standards for the substantive claims in this case. *Young Women's Christian Ass'n of the Nat'l Capital Area, Inc. v. Allstate Ins. Co. of Canada*, 275 F.3d 1145, 1150 (D.C. Cir. 2002).[2]

---

[2] If there were a conflict, the Court would "then determine, pursuant to District of Columbia choice of law rules, which jurisdiction has the more substantial interest in the resolution of the issues." *Young Women's Christian Ass'n*, 275 F.3d at 1150; *see also Eli Lilly & Co. v. Home Insurance Co.*, 764 F.2d 876, 882 (D.C. Cir. 1985) ("In a diversity case a federal court must apply the choice of law principles of the jurisdiction in which it sits."). Vu is a citizen of Virginia, and her companies are incorporated in the District of Columbia; Nguyen is domiciled in Texas. *See* Compl. ¶¶ 2–5. The January 2018 meeting in which the parties decided to enter a joint venture and established the terms of their agreement occurred in Virginia, Pl.'s Stmt. of Undisputed Facts ¶ 5, as did the later March meeting, *id.* ¶ 39. Other meetings occurred in Texas, *id.* ¶ 61, and California, *id.* ¶ 45. Vu made her personal purchases with Nguyen's contributions primarily in Virginia as well. *Id.* ¶ 70. And although the plan between the parties was to flip properties in Washington, D.C., Vu never actually purchased any property there. *Id.* ¶ 101. Given these facts, Virginia would likely have the most substantial interest in the resolution of this case, and Virginia law would apply should there be a conflict of law.

### III. ANALYSIS

Nguyen's claims include counts of fraud, breach of contract, breach of fiduciary duties, and a request for punitive damages and attorney's fees. *See generally* Mot. for Am. Summ. J. Similarly, in her counterclaim, Vu alleges several counts of fraud, breach of contract, breach of fiduciary duties, and various tort claims. *See generally* Countercl.

#### A. Fraud Claims

Two fraud claims remain: count I of the complaint, which alleges that Vu fraudulently induced Nguyen's participation in the business venture; and count VIII of the counterclaim, which alleges that Nguyen fraudulently induced Vu's participation in the business venture. Based on the undisputed facts above, the Court will grant summary judgment to Nguyen on both claims.

For a claim of fraud in the inducement under Virginia law, "a plaintiff must prove the following three elements by clear and convincing evidence: (1) the defendant made a material misrepresentation for the purpose of procuring a contract; (2) the plaintiff relied on the misrepresentation; and (3) the plaintiff was induced by the misrepresentation to enter into the agreement." *Fransmart, LLC v. Freshii Dev., LLC*, 768 F. Supp. 2d 851, 864 (E.D. Va. 2011) (citing *Brame v. Guarantee Fin. Co.*, 139 Va. 394 (1924)). The undisputed facts show that Vu made several material misrepresentations, including about her own financial contributions to the joint venture, *see, e.g.*, Pl.'s Stmt. of Undisputed Facts ¶¶ 6, 11–13, and her intended use of Nguyen's contributions, *see, e.g., id.* ¶¶ 15–16, 20, 101. She represented, for example, that she had already contributed $200,000 to the project herself when she had contributed nothing, *see id.* ¶¶ 6, 11–13, and that she would use Nguyen's contributions for the agreed-upon purchase of real estate, when she instead used the funds for personal expenses unrelated to the joint venture, *id.*

¶¶ 15–16, 20, 101.  Further, Nguyen relied on Vu's misrepresentations, *see id.* ¶ 32, and was induced to participate in the project and to continue to contribute additional significant sums on the basis of her misrepresentations, *id.* ¶¶ 10–11, 39–40.

On the other hand, the undisputed facts make clear that Vu cannot prevail on her fraud counterclaim.  She alleges that Nguyen misrepresented his wealth, his ability to contribute $500,000 quickly, and the fact that he wanted a business, not romantic, relationship with Vu.  Countercl. ¶¶ 176–78.  The undisputed facts, however, establish that "[w]hen finalizing the terms of the Business Venture on January 6, 2018, Mr. Nguyen did not make any representation to Ms. Vu that he intended to invest more than the agreed-upon $50,000 sum toward the Business Venture, and did not otherwise make any representations to Ms. Vu about his personal wealth and/or income." Pl.'s Stmt. of Undisputed Facts ¶ 28.  Further, the undisputed facts contain no support for the proposition that Nguyen misrepresented his motivation for entering into the joint venture.  *See generally* Pl.'s Stmt. of Undisputed Facts.  For these reasons, Vu cannot establish that Nguyen made any material misrepresentations, and her fraud counterclaim cannot survive summary judgment.

**B.     Contractual Claims**

The remaining contractual claims include: count III of the complaint, which alleges that Vu breached the January 2018 investment contract; count IV of the complaint, which alleges that Vu breached the loan agreement; and counts I and II of Vu's counterclaims, which allege that Nguyen breached the January 2018 investment contract.  The elements of a breach of contract claim include: the existence of "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff

caused by the breach of obligation." *Navar Inc. v. Federal Business Council*, 291 Va. 338, 344 (2016).

Based on the undisputed facts, Nguyen has established the elements of breach of contract both as to the January 2018 investment contract and the later personal loan agreement. First, as for the investment contract, the undisputed facts show that Nguyen and Vu had a "meeting of the minds" at the January 6, 2018 meeting in which they agreed to begin the joint venture. *Phillips v. Mazyck*, 273 Va. 630, 636 (2007) ("It is elementary that mutuality of assent—the meeting of the minds of the parties—is an essential element of all contracts."); *see* Pl.'s Stmt. of Undisputed Facts ¶¶ 6–19. At that meeting, the parties discussed specific terms and reached an agreement: Nguyen accepted Vu's offer of a 25% ownership interest in the project to flip real estate in Washington, D.C. in exchange for his $50,000 investment. Pl.'s Stmt. of Undisputed Facts ¶ 7. "The basic elements of a contract are an offer, acceptance, and consideration," *Sfreddo v. Sfreddo*, 59 Va. App. 471, 488 (2012), and this agreement satisfies all three. Because Vu did not oppose the motion for summary judgment, furthermore, she does not dispute these facts or offer any defenses to contract formation. In any case, she concedes in her counterclaim allegations that "[o]n or around January 5, 2018, Mr. Nguyen and Ms. Vu entered into the Contract to invest in and develop real estate in the United States and abroad." Countercl. ¶ 115. Second, the undisputed facts show that Vu breached the agreement and that Nguyen suffered damages. For example, Vu promised to use one of her companies "as the primary vehicle to purchase and sell real estate in furtherance of the Business Venture, as well as to safeguard the stakeholders' respective investments in bank accounts . . . and use such exclusively in furtherance of the Business Venture." Pl.'s Stmt. of Undisputed Facts ¶ 23. She failed, however, to safeguard Nguyen's investment and in fact used the funds on personal purchases unrelated to the agreed

upon purpose. *Id.* ¶¶ 37, 101. Vu also breached subsequent agreements (or modifications to the original agreement) by failing to contribute additional funds, despite promises to do so. *Id.* ¶ 39. And Nguyen was damaged by this breach—he has received no repayment for any of his $505,000 in investment contributions or associated fees and penalties. *Id.* ¶ 101.

Nguyen has likewise established breach and damages as to his June 2018 personal loan to Vu. In the written promissory note agreement, *id.* ¶¶ 53–54, Nguyen agreed to lend Vu $50,000 at a rate of 15% interest. *Id.* Vu agreed to pay the principal amount, fees, and interest on or before December 30, 2018. *Id.* With that deadline long passed, Vu has breached the agreement by failing to pay Nguyen *any* amount in repayment of the loan. *Id.* ¶ 101.

Vu's breach of contract claims, meanwhile, find no support in the undisputed facts. In her counterclaim, Vu alleged that Nguyen breached the January 6, 2018 agreement by "parcel[ing] out his capital contributions in small amounts and over time," instead of providing $500,000 right away, Countercl. ¶ 121; failing to sign certain documents in furtherance of the venture or listen to Vu's business plans, *id.* ¶ 122; conditioning his payments on sexual advances, *id.* ¶ 132; and using the investment contract as a way to pressure Vu into a romantic relationship, *id.* ¶ 133. The undisputed facts establish, however, that "Nguyen never agreed to remit more than his initial $50,000.00 to the Business Venture in January 2018," Pl.'s Stmt. of Undisputed Facts ¶ 86, that Nguyen "never delayed, impeded, or otherwise harmed the operations of the Business Venture," *id.* ¶ 89, "never refused to execute any documents and/or agreements related to the operations of the Business Venture," *id.* ¶ 88, "and never conditioned his provision of funds on Ms. Vu's participation in a romantic relationship with Mr. Nguyen," *id.* Thus, without any other bases for Vu's breach of contract claims, the claims cannot survive as a matter of law.

### C. Fiduciary Claims

The fiduciary claims include: count II of the complaint, which alleges that Vu and her companies unlawfully converted Nguyen's investment funds; count V of the complaint, which alleges that Vu and her companies breached their fiduciary duties to Nguyen by exploiting their position of trust; and count III and count V of Vu's counterclaims, which allege that Nguyen breached fiduciary duties that he owed to Vu and her companies.

"If the parties are joint venturers, a fiduciary duty then exists between or among them." G. Bogert, *et al.*, *The Law of Trusts and Trustees* § 488 (2020); *see also Hamby v. St. Paul Mercury Indem. Co.*, 217 F.2d 78, 80 (4th Cir. 1954) ("Certainly there can be no question as to the existence of the fiduciary capacity in a case where the agent has been entrusted with money to be used for a specific purpose."). Thus, "[i]n receiving and handling the funds entrusted to [her] . . . [Vu] occupied a fiduciary relationship . . . with a transcendent duty to disburse the funds as [] directed." *Pickus v. Va. State Bar*, 232 Va. 5, 10 (1986). And "[c]onversion is a tort involving injury to property," *Hartzell Fan, Inc. v. Waco, Inc.*, 256 Va. 294, 301 (1998), and "includes any distinct act of dominion wrongfully exerted over property that is in denial of, or inconsistent with, the owner's rights," *id.* at 301–02.

Here, Vu assumed responsibility for the management of the funds, Pl.'s Stmt. of Undisputed Facts ¶ 24, and was obligated to safeguard Nguyen's financial property as the sole owner of her companies' bank accounts and the manager of the business venture, *see id.* ¶¶ 24, 42. But, as discussed at length above, Vu and her companies did not safeguard the funds or use them for the real estate project, despite their duty to do so. *Id.* ¶ 101. Thus, the defendants breached their fiduciary duty to Nguyen by failing to use the funds for the agreed upon purpose

and converted the funds by using them for an improper purpose inconsistent with their authority over Nguyen's property.

As for Vu's counterclaim, Nguyen likewise owed Vu and her companies a fiduciary duty. But it is undisputed that Nguyen "never delayed, impeded, or otherwise harmed the operations of the Business Venture," *id.* ¶ 89, "never refused to execute any documents and/or agreements related to the operations of the Business Venture," *id.* ¶ 88, "and never conditioned his provision of funds on Ms. Vu's participation in a romantic relationship with Mr. Nguyen," *id.* Thus, there is no evidence that Nguyen breached any fiduciary duties owed to the defendants.

### D. Tort Claims

Finally, Vu brings several tort claims against Nguyen: count V of the counterclaim, which alleges that Nguyen committed battery against Vu, specifically by touching her in an inappropriate manner on a business trip in California; count VII of the counterclaim, which alleges that Nguyen tortuously interfered with Vu's prospective business advantage; count X of the counterclaim, which alleges that Nguyen made negligent misrepresentations to entice Vu to enter into the business agreement; and count XI of the counterclaim, which alleges that Nguyen acted negligently by failing to "sign documents, invest money, and otherwise act with the ordinary standard of care." Countercl. ¶ 211.

Based on the undisputed facts, none of these claims survive summary judgment. Battery requires offensive contact, *see Ashcraft v. King*, 228 Cal. App. 3d 604, 611 (1991),[3] but it is undisputed that "Mr. Nguyen has never engaged in any offensive physical contact with Ms. Vu

---

[3] Because the alleged incident occurred in California, Countercl. ¶ 78, the Court cites California law, although there is no conflict on this issue between the relevant jurisdictions. *See Dao v. Faustin*, 402 F. Supp. 3d 308, 317 (E.D. Va. 2019) (stating the elements for battery under Virginia law).

at any time," Pl.'s Stmt. of Undisputed Facts ¶ 99, and "Mr. Nguyen and Ms. Vu have never engaged in sexual or offensive physical contact at any time," *id.* ¶ 100.

Next, both the negligence counterclaim and the interference with prospective business advantage counterclaim are based on allegations that Nguyen failed to make capital contributions and refused to sign important documents. *See* Countercl. ¶¶ 168, 211. It is undisputed, however, that Nguyen "never refused to execute any documents and/or agreements related to the operations of the Business Venture," Pl.'s Stmt. of Undisputed Facts ¶ 88, and in fact made $505,000 in capital contributions, *id.* ¶ 77.

For the negligent misrepresentation claim, Vu alleges that Nguyen misrepresented that (1) "he had significantly more personal wealth and expendable investment funds than he does," Countercl. ¶ 199; (2) "he could and would pay his $500,000 investment into the Business Venture in a relatively limited, quick payment or payments, spanning a short period of time," *id.* ¶ 200; (3) "that he wanted a business, not a romantic, relationship with Ms. Vu," *id.* ¶ 201; and (4) "he would cooperate with rather than hinder Ms. Vu's efforts to develop real estate deals," *id.* ¶ 202. The undisputed facts, meanwhile, establish that (1) "Nguyen did not make any representation to Ms. Vu that he intended to invest more than the agreed-upon $50,000.00 sum toward the Business Venture, and did not otherwise make any representations to Ms. Vu about his personal wealth and/or income," Pl.'s Stmt. of Undisputed Facts ¶ 28; (2) Nguyen "never delayed, impeded, or otherwise harmed the operations of the Business Venture," *id.* ¶ 89, and; (3) "Mr. Nguyen and Ms. Vu have never engaged in sexual or offensive physical contact at any time," *id.* ¶ 100. Given that the undisputed facts contradict Vu's allegations in full, these counterclaims do not survive.

E.     **Punitive Damages and Attorney's Fees**[4]

Nguyen requests punitive damages "in an amount not less than $350,000,"[5] Am. Mot. for Summ. J. at 43, although he provides no support justifying that particular amount, *see id.* "A prevailing plaintiff in a fraud claim may be entitled to punitive damages if there is a showing of 'actual malice, or such recklessness or negligence as to evidence a conscious disregard of the rights of others.'" *Glaser v. Hagen*, No. 14-cv-1726, 2016 WL 521454, at *2 (E.D. Va. Feb. 5, 2016) (quoting *Jordan v. Suave*, 247 S.E.2d 739, 741 (Va. 1978)). "[T]he Virginia Supreme Court held that punitive damages in a fraud action may be recovered only if there is proof, either direct or circumstantial, showing actual malice." *Job Am. Mgmt. Exp. Imp.—N. Carolina, Ltd. v. Kaltone Petrol. Mktg. Corp.*, No. 99-cv-24, 1999 WL 33228367, at *6 (E.D. Va. Dec. 10, 1999) (internal quotation marks omitted). This requires a "state of mind above the threshold level required to establish liability for compensatory relief." *Sit–Set, A.G. v. Universal Jet Exchange, Inc.*, 747 F.2d 921, 928 (4th Cir. 1984). "Where this line of aggravation is to be drawn in fraud cases is of course a matter difficult of definition and application," *id.*, but requires "an element of wantonness, or malice, or overreaching going beyond mere shadiness in commercial dealings," *id.* (internal quotation marks omitted).

---

[4] Unlike the relevant legal standards for the substantive claims in this case, the laws of the District of Columbia and Virginia diverge slightly when it comes to punitive damages. *Compare Butera v. District of Columbia,* 235 F.3d 637, 657 (D.C. Cir. 2001) (requiring "malice," defined as "fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's right, or other circumstances tending to aggravate the injury"), *with Jordan v. Suave*, 247 S.E.2d 739, 741 (Va. 1978) (requiring "actual malice" defined as "ill will, malevolence, grudge, spite, wicked intention, or a conscious disregard of the rights of another."). But, as discussed above, *supra* n.2, the Court will apply the law of Virginia, pursuant to this forum's choice of law rules.

[5] This amount represents the statutory maximum for punitive damages under Virginia law. *See* Va. Code Ann. § 8.01-38.1.

Punitive damages are "determined by the trier of fact." Va. Code Ann. § 8.01-38.1. Accordingly, even taking the undisputed facts as true, the Court cannot determine as a matter of *law* that Nguyen is entitled to any sum, let alone a specific sum, of punitive damages. Rather, the trier of fact will have to weigh the facts and adjudge whether the events here are so egregious as to establish "actual malice." *Jordan*, 247 S.E.2d at 741. The record before the Court does not support a legal conclusion on that issue, so summary judgment on punitive damages would be improper.

Nguyen also requests attorney's fees and costs. "The general rule in [Virginia law] is that in the absence of a statute or contract to the contrary, a court may not award attorney's fees to the prevailing party." *Carlson v. Wells*, 705 S.E.2d 101, 109 (Va. 2011). One "exception[]" to the rule, however, is that "in a fraud suit, a chancellor, in the exercise of his discretion, may award attorney's fees to a defrauded party." *Id.* at 109–110; *see also C.F. Tr., Inc. v. First Flight Ltd. P'ship*, 359 F. Supp. 2d 497, 501 (E.D. Va. 2005) (recognizing this exception). This is especially relevant when there is a "pattern of misconduct," *Carlson*, 705 S.E.2d at 110, in which the fraudulent party "engaged in callous, deliberate, deceitful acts," *Prospect Dev. Co. v. Bershader*, 515 S.E.2d 291, 301 (1999). Such an award is a matter of "discretion." *Tauber v. Commonwealth ex rel. Kilgore*, 263 Va. 520, 547 (2002); *see also In re Wassenaar*, 268 B.R. 477, 481 (W.D. Va. 2001) ("*Bershader* leaves it to the trial court's discretion to determine if attorney's fees should be awarded in a fraud case.").

Nguyen provides no statutory or contractual basis for the award of attorney's fees and costs, but instead relies on this state common law exception to the general rule. *See* Am. Mot. for Summ. J. at 2–3. And although Virginia law provides for a fraud exception, the fraud claims in this case represent only a minority of the claims brought. *See generally* Compl. Indeed, only

17

one count of Nguyen's complaint (count I) alleges a claim for fraud. *Id*. Further, the fraud exception in Virginia law is closely tied to a chancellor's particular powers in equity. *See Bershader*, 258 Va. at 92 (holding that "a chancellor, in the exercise of his discretion, may award attorney's fees to a defrauded party"); *JTH Tax, Inc. v. Aime*, No. 16-cv-279, 2017 WL 2999970, at *4 (E.D. Va. June 26, 2017), *aff'd in part, vacated in part*, 744 F. App'x 787 (4th Cir. 2018) ("[T]he *Bershader* decision heavily relied upon the chancellor's equitable powers in granting an award of attorneys' fees."); *Anand v. Allison*, 55 Va. Cir. 261 (2001) (assuming "*doubtfully*, that the trial judge in a law action in which fraud has been proven, has the same power to award attorney's fees as does the chancellor" (emphasis added)). And "this exception, like all exceptions to the rule against awarding attorneys' fees unless authorized by statute or contract, should be interpreted narrowly." *C.F.*, 359 F. Supp. at 503. Thus, without any other basis to justify a departure from the ordinary rule, the Court will deny the request for attorney's fees and costs. *See, e.g.*, *Aim*e, 2017 WL 2999970, at *4 (finding that a case involving fraud, among other claims, did not "qualify as a limited circumstance where the Court should exercise its discretion to grant Defendants an award of attorneys' fees").

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is granted in part and denied in part. Accordingly, Nguyen is entitled to compensatory damages totaling $577,055, *see*

*supra* at 5, against the defendants. A separate order consistent with this decision accompanies this memorandum opinion.

December 20, 2020

_____
DABNEY L. FRIEDRICH
United States District Judge